## MELVIN YARMUTH ET AL. *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY

[Misc. No. 3, September Term, 1979.]

*Decided November 5, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Paul Mark Sandler,* with whom were *Stanley E. Preiser* and *Freishtat, Schwartz & Sandler* on the brief, for appellants.

*Sidney G. Leech,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974), §§ 12-601 to 12-609 of the Courts and Judicial Proceedings Article, the United States District Court for the District of Maryland has certified for our consideration two questions of state law:

> "(1) May an insurance company, under Maryland law, include a provision in an automobile insurance policy which would prohibit the recovery of uninsured motorist benefits under that policy where the insured's claim admittedly exceeds $40,000 and where the insured has already recovered the sum of $40,000 under the uninsured motorist coverage provided by another insurance policy?
>
> (2) Does § 543(a) of Art. 48A, Ann. Code of Md., prohibit the recovery by an insured of uninsured motorist benefits under one policy where the insured's claim admittedly exceeds $40,000 and where the insured has already recovered the sum of $40,000 under the uninsured motorist coverage of another insurance policy?"

The statement of relevant facts, as set forth by the certifying court, discloses that on January 24, 1976, a tractor trailer operated by Fred Kile collided with an automobile driven by Albert Starr. The collision resulted in the deaths of Albert Starr, his wife, Elizabeth, and their son, Jay. Hillary Starr, a minor, was the only member of the Starr family who

survived the accident. At the time of the collision, Kile was an uninsured motorist and he was driving an uninsured tractor trailer.

The automobile operated by Starr was owned and insured by his employer, Motorola, Inc. A policy covering this vehicle was issued by the Zurich Group insurance companies (Zurich); it provided uninsured motorist benefits up to $20,000 per person to a maximum of $40,000 per accident. At the time of the accident, Starr owned a Maryland registered 1971 Dodge automobile which was insured under a policy issued by Government Employees Insurance Company (GEICO). This policy also provided uninsured motorist benefits up to $20,000 per person to a maximum of $40,000 per accident, as required by Maryland Code (1957, 1979 Repl. Vol.), Art. 48A, § 541(c). That section requires that "every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article [up to $20,000 for any one person and up to $40,000 for any two or more persons], for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle . . . ."

The appellants, the personal representatives of the decedents' estates and the guardian of Hillary Starr, sued Motorola, Zurich and GEICO for damages in the United States District Court for the District of Maryland. A settlement agreement was reached between all the parties except GEICO whereby Zurich agreed to pay $40,000 to the appellants. This figure represented the maximum uninsured motorist benefits under the primary policy covering the Motorola car in which the Starrs were killed. Although no agreement was reached with GEICO, the appellants dismissed the action as to all other defendants.

On July 3, 1978, the appellants filed an amended complaint against GEICO, seeking a declaratory judgment that, upon proper proof of damages, GEICO would be obligated to pay an additional $40,000 in uninsured motorist benefits under its policy insuring Albert Starr's 1971 Dodge vehicle. Answering the suit, GEICO claimed that the "Other Insurance" clause

contained in its policy insuring Starr barred any recovery of uninsured motorist benefits by the appellants. That clause provided:

> "OTHER INSURANCE. With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, the insurance under this amendment shall apply only as excess insurance over any other similar insurance available to such automobiles as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limits of liability for such other insurance."

GEICO claimed that § 543(a) of Article 48A also barred recovery. That section provides:

> "Notwithstanding any other provision of this subtitle, no person shall recover benefits under the coverages required in §§ 539 [personal injury protection or PIP] and 541 [uninsured motorist coverage] of this article from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis."

In opposition to a motion for summary judgment filed by GEICO, the appellants contended that the "Other Insurance" clause in GEICO's policy was void because it conflicted with the requirement of § 541(c) of Article 48A that every policy of motor vehicle liability insurance contain uninsured motorist coverage in at least the minimum statutory amounts. Appellants also claimed that § 543(a) of Article 48A, prohibiting recovery of uninsured motorist benefits from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis, was not applicable under the facts of the case.

Concluding that there was no controlling state law precedent under which the case could be decided, the District Court certified the two questions previously set forth.

(1)

Appellants contend that where, as here, two insurance carriers issue automobile liability insurance policies containing separate uninsured motorist coverages, both companies are liable to the insured for the total coverage for which premiums were paid, or the full amount of his damages, whichever is less. The "Other Insurance" clause contravenes the plain meaning of § 541(c), the appellants argue, because every policy must contain uninsured motorist coverage and to interpret the statute so as not to require that that coverage be honored would undermine its purpose. In other words, appellants say that to give effect to the "Other Insurance" clause is to reduce the required minimum coverage of the GEICO policy from $40,000 to zero. They find support for this argument in cases from other jurisdictions invalidating "Other Insurance" clauses and permitting interpolicy stacking of uninsured motorist coverage to the extent that such stacking does not exceed the full indemnification to which the insured is entitled for his injuries.[1] Appellants contend that this interpretation is required by public policy considerations because the uninsured motorist coverage mandated by the legislature was intended to benefit the innocent victims of financially irresponsible motorists. Appellants rely on cases from other jurisdictions in support of this conclusion.[2]

Appellants contend that the prohibition against duplicative or supplemental recovery of uninsured motorist benefits in § 543(a) does not bar their claim under GEICO's policy since they do not seek to recover more than the full indemnification for the injuries sustained. They rely on *Langston v. Allstate Ins. Co.,* 40 Md. App. 414, 392 A.2d 561 (1978), a case involving

---

1. *See, e.g.,* Patton v. Safeco Ins. Co. of America, 148 Ind. App. 548, 267 N.E.2d 859 (1971); Harthcock v. State Farm Mut. Auto. Ins. Co., 248 So.2d 456 (Miss. 1971); Harleysville Mut. Cas. Co. v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968); Bryant v. State Farm Mut. Auto. Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965).

2. *See, e.g.,* Simpson v. State Farm Mut. Auto. Ins. Co., 318 F. Supp. 1152 (S.D. Ind. 1970); Protective Fire & Cas. Co. v. Woten, 186 Neb. 212, 181 N.W.2d 835 (1970); Fidelity & Cas. Co. of N.Y. v. Gatlin, 470 S.W.2d 924 (Tex. Civ. App. 1971); Bell v. State Farm Mut. Auto. Ins. Co., 207 S.E.2d 147 (W.Va. 1974).

a claim for uninsured motorist benefits, where the court interpreted "duplicative" benefits, in the context of § 543(a), to mean "payment in full twice or more for the same claim" and construed "supplemental" to mean "securing remuneration over and above the recovery from an uninsured motorist of all that the claimant is legally entitled to recover." 40 Md. App. at 429-30. This definition, according to appellants, permits interpolicy stacking of uninsured motorist coverage and is consistent with the authority cited from other jurisdictions.

## (2)

That the "Other Insurance" provision in GEICO's policy, if effective, would bar recovery by appellants is clear. First, the named insured under the policy, Albert Starr, was killed while occupying a motor vehicle that he did not own. Second, the "Other Insurance" clause provides that the GEICO coverage applies only as excess insurance over the primary insurance — in this instance over that afforded by Zurich's policy. Because the limit on the uninsured motorist coverage of both the GEICO and Zurich policies is $40,000, the final clause in the "Other Insurance" provision ensures that the GEICO policy does not apply as excess insurance. Therefore, the policy limits of GEICO's liability does not exceed that of Zurich's liability. Absent contrary authority, the "Other Insurance" clause would plainly preclude appellants' recovery under the GEICO policy.

While a number of jurisdictions regard "Other Insurance" clauses as ineffective to prevent the interpolicy stacking of uninsured motorist coverage (see footnotes 1 and 2), other jurisdictions have held that a statutory provision like § 541(c), requiring every automobile liability insurance policy to contain uninsured motorist coverage in specified minimum amounts, does not prohibit an insurance company from limiting its liability through an "Other Insurance" clause, provided total coverage is not reduced below the statutory minimum. See, e.g., Pettid v. Edwards, 195 Neb. 713, 240 N.W.2d 344 (1976); Weemhoff v. Cincinnati Insurance Co., 41

Ohio St. 2d 231, 325 N.E.2d 239 (1975); *Cunningham v. Western Cas. & Sur. Co.,* 243 N.W.2d 172 (S.D. 1976); *Lyon v. Hartford Accident & Indemnity Company,* 25 Utah 2d 311, 480 P.2d 739 (1971); *Nelson v. Employers Mutual Casualty Company,* 63 Wis.2d 558, 217 N.W.2d 670 (1974). Neither line of cases, however, involved a statute like § 543(a) which prohibits the recovery of benefits under uninsured motorist coverage "from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis." Statutory provisions similar to § 543(a) have been enacted in other jurisdictions. Such provisions, which authorize limitations on recovery of uninsured motorist benefits, are similarly designed to prevent duplication of insurance. In these jurisdictions, "Other Insurance" clauses have been viewed as valid. *See Westhoff v. American Interinsurance Exchange,* 250 N.W.2d 404 (Iowa 1977); *State Automobile Mutual Insurance Co. v. Cummings,* 519 S.W.2d 773 (Tenn. 1975).

We considered the construction of § 543(a) in *Travelers Ins. Co. v. Benton,* 278 Md. 542, 365 A.2d 1000 (1976). In that case, Benton was injured in an accident while riding as a passenger in an automobile insured by the Maryland Automobile Insurance Fund (MAIF). Section 539 of Art. 48A of the Code provided that no motor vehicle liability policy could be issued unless it afforded personal injury protection (PIP) benefits in the minimum amount of $2,500. Benton claimed and was awarded PIP benefits by MAIF in the amount of $2,500. Because her total medical expenses and lost wages exceeded $5,000, Benton made a PIP claim against her own insurer, Travelers, for an additional $2,500. The Travelers' policy contained an exclusion of PIP coverage for the named insured while occupying a nonowned vehicle on which PIP coverage existed under another policy, and also expressly provided that a claimant could not recover PIP benefits from more than one motor vehicle liability insurance policy. We noted that the statutory plan making PIP coverage mandatory created a situation in which PIP coverage potentially existed under more than one policy, whenever a person qualifying as an insured under his own motor vehicle liability policy was injured while a passenger in a motor vehicle registered in

Maryland. We observed that the coordination of benefits provisions contained in § 543(a) specified that recovery shall be under one, but not both policies; that the statute said in no uncertain terms that no person shall recover PIP benefits from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis. Finding no ambiguity in § 543(a), or in the words of the policy exclusion, we held that Benton could not recover the additional $2,500 in PIP benefits claimed from Travelers. In so concluding, we did not expressly elaborate on the meaning of the "duplicative or supplemental" language contained in § 543(a). It is nevertheless clear from the opinion that we did not view § 543(a) as simply a device to prevent recovery on a second policy that would thereby result in a claim in excess of total damages. On the contrary, Benton had not received one full recovery of her total medical expenses and lost wages, so that if she had been permitted to recover PIP benefits from her own insurer, she would not have received double recovery for her loss. The purpose of § 543(a) is thus not, as appellants contend, to prevent more than one full recovery.

The principles of *Benton* are applicable in this case because § 543(a) expressly governs the recovery of both PIP and uninsured motorist benefits. In light of *Benton,* therefore, § 541(c) must be read to have the purpose of providing minimum protection to individuals injured by uninsured motorists. But such benefits may be obtained under § 543(a) in the circumstances here involved only through the primary policy. In prohibiting recovery of uninsured motorist benefits from more than one policy or insurer on a duplicative or supplemental basis, "duplicative" means payment in full twice or more for the same claim. The term "supplemental" is, we think, more encompassing, and refers to attempts to fill the deficiencies in the uninsured motorist coverage of the primary policy by claiming under a second policy. Under either term, after a claim for policy limits has been paid under the primary policy, recovery under a second policy is prohibited.

In enacting § 541(c) and § 543(a), the General Assembly has legislated a public policy consistent with the "Other

Insurance" clause in the GEICO policy. Contrary to the appellants' position, this clause does not conflict with § 541(c), as it does not operate to reduce the insured's coverage below the statutory minimum. The interpretation of § 543(a), as urged by appellants, would result in an unwarranted judicial enactment of an amount of uninsured motorist coverage that is greater than the minimum statutory limits as specified by the General Assembly. This would give a victim of an uninsured motorist greater insurance protection than would be available if he had been injured by an insured motorist having only the minimum required liability insurance.[3]

We, therefore, answer both certified questions in the affirmative. Under § 543(a) an insurance company may include a provision in an automobile insurance policy which prohibits recovery of uninsured motorist benefits under that policy where the insured's claim exceeds $40,000, and where the insured has already recovered $40,000 under the uninsured motorist coverage provided by another insurance policy. In response to the second certified question, § 543(a) prohibits recovery by an insured of uninsured motorist benefits under one policy where the insured's claim exceeds $40,000 and where the insured has already recovered $40,000 under the uninsured motorist coverage of another insurance policy.

> *Questions of law answered as herein set forth; costs to be equally divided between the parties in accordance with the certification order.*

3. This conclusion makes evident our disagreement with a contrary construction placed upon § 543(a) in dicta by the Court of Special Appeals in Langston v. Allstate Ins. Co., 40 Md. App. 414, 392 A.2d 561 (1978), a case upon which appellants place major reliance. Apparently, *Benton* was not brought to the attention of the Court of Special Appeals.