6 A.3d 360

**Ronald L. POWELL, et al.**

v.

**R. Jeffrey BRESLIN, et al.**

**No. 181, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 4, 2010.

David M. Kopstein, Seabrook, MD (Kopstein & Periman, Jay D. Miller, Miller, Murtha & Psoras LLC of Lutherville, on the brief) for appellant.

Edwin L. Keating (E. Philip Franke, Siobhan R. Keenan, Baxter, Baker, Sidle, Conn & Jones PA, on the brief) Baltimore, MD, for appellee.

Panel: *DAVIS, KEHOE, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, J. (Retired, Specially Assigned).

Appellants, the adult children of decedent, Jackie D. Powell, challenge the February 9, 2007 Amended Order of the Circuit Court for Baltimore City granting summary judgment to appellees, Dr. Jeffrey R. Breslin and Kremen, Breslin & Fraiman, P.A. The circuit court subsequently denied appellants' Motion for Reconsideration by Order of August 10, 2007, and appellants' Motion to Alter or Amend the Judgment *Nunc Pro Tunc* by Order of March 11, 2008. Appellants noted this timely appeal after the entry of final judgment as to the remaining parties.

Appellants present a single question for our review, which we have slightly rephrased:

In a medical negligence case, does the provision of Md. Code, Courts and Judicial Proceedings § 3–2A–

---

* Arrie W. Davis, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

04(b)(1)(i)(1), requiring dismissal without prejudice if the plaintiff fails to file a certificate of a qualified expert, apply where the plaintiff files a certificate signed by a person who does not meet the qualifications set forth in CJ § 3–2A–02(c)(2)(ii)? [1]

For the reasons set forth below, we shall hold that, in such circumstance, the appropriate sanction is dismissal without prejudice, not summary judgment.

## FACTUAL and PROCEDURAL HISTORY

On October 31, 2002, the decedent, Jackie Powell, was admitted to Good Samaritan Hospital to undergo a hepatorenal arterial bypass procedure to be performed by Dr. Breslin. Dr. Monford Wolf administered an epidural anesthetic to Mr. Powell during his surgery. Mr. Powell subsequently developed an epidural hematoma that injured his spinal cord, paralyzing him from the waist down. Appellants allege that Mr. Powell's injury, and the resulting paralysis, eventually led to his death on March 8, 2004. Appellants further allege that the defendant health care providers were negligent in failing to recognize and treat the epidural hematoma in a timely manner.

Appellants initially filed a claim against Dr. Wolf, his professional association, Hunt Valley Anesthesia Associates, P.A., and Good Samaritan Hospital, with the Health Claims Arbitration Office (HCAO) on July 30, 2004.[2] In conjunction with their claim, appellants also filed a Certificate of Qualified Expert ("certificate")[3] with HCAO and served notice of their intent to waive arbitration pursuant to Md.Code (2006 Repl.

---

1. An *amicus curiae* brief was filed in this appeal by the Maryland Association of Justice, urging us to adopt appellants' arguments, and to reverse the judgment of the circuit court.

2. The name of the Health Claims Arbitration Office (HCAO) was later changed to the Health Care Alternative Dispute Resolution Office (HCA-DRO). We shall use those terms interchangeably.

3. The document referenced in C & JP § 3–2A–04(b) has historically been referred to as a Certificate of Merit or a Certificate of Qualified Expert.

Vol.), Courts & Judicial Proceedings ("CJ") § 3–2A–06B. Pursuant to the waiver, the HCAO transferred the case to the Circuit Court for Baltimore City by Order dated September 27, 2004.

On October 20, 2004, appellants filed their initial two-count complaint, asserting a survival claim and a wrongful death action against Dr. Wolf, Hunt Valley Anesthesia Associates, P.A., and Good Samaritan Hospital. Appellants subsequently amended their complaint on November 24, 2004, to add two negligence counts against Good Samaritan. On August 25, 2005, appellants amended their complaint a second time, naming Dr. Breslin and his professional association, Drs. Kremen, Breslin & Fraiman, P.A., as defendants in the case. In conjunction with their Second Amended Complaint, appellants filed a certificate and a report signed by a board certified anesthesiologist, Dr. Ronald E. Burt. Appellants again served notice of their intention to waive arbitration before the HCAO, and jurisdiction over the Amended Complaint was transferred to the circuit court by Order dated August 8, 2005.

After some scheduling difficulties, a deposition of Dr. Burt was finally held on September 6, 2006. Dr. Burt testified that he had no clinical experience in vascular surgery, had never taught in the field of vascular surgery, and did not hold himself out as an expert in vascular surgery. His only professed area of expertise was anesthesiology. He further testified that he was unable to address the applicable standard of care for vascular surgeons, or what training or experience vascular surgeons might have that would be relevant to diagnosing or treating an epidural hematoma.

As a result of those revelations, Dr. Breslin and his professional association filed a Motion to Dismiss or in the alternative for Summary Judgment on October 26, 2006. The circuit court heard oral arguments on the motion from the remaining parties on January 22, 2007.[4] On January 24, 2007, the court

---

4. Appellants reached a settlement with Good Samaritan Hospital, which was then dismissed from the case by a Stipulation of Dismissal filed August 16, 2006.

issued a Memorandum Opinion and Order granting Dr. Breslin's Motion for Summary Judgment.[5] Appellants filed a Motion to Reconsider on February 5, 2007, arguing that the proper remedy for disqualification of their certificate was dismissal without prejudice, not summary judgment. On August 10, 2007, the court issued an Order summarily denying appellants' Motion.

On October 29, 2007, appellants filed a Motion to Alter or Amend Judgment *Nunc Pro Tunc.*[6] The court heard oral argument on the motion on February 7, 2008, and denied appellants' Motion by a Memorandum of Decision on March 11, 2008.

Upon resolution of all claims in the case through settlement with Dr. Wolf and Hunt Valley Anesthesia Associates, P.A., and their subsequent dismissal from the case, appellants filed the current appeal on March 27, 2009.[7]

## STANDARD of REVIEW

This Court reviews a decision of a circuit court granting summary judgment utilizing a *de novo* standard of review. *Harford County v. Saks Fifth Ave. Distrib. Co.,* 399 Md. 73, 82, 923 A.2d 1 (2007); *Zitterbart v. Am. Suzuki Motor Corp.,* 182 Md.App. 495, 501–02, 958 A.2d 372 (citing *Crickenberger v. Hyundai Motor Am.,* 404 Md. 37, 45, 944 A.2d 1136 (2008)), *cert. denied,* 406 Md. 581, 961 A.2d 555 (2008). When deciding

---

**5.** Dr. Breslin's professional association was not named in the original Order granting summary judgment. After submission of a letter from counsel addressing the oversight, the court subsequently amended the Order to include Drs. Kremen, Breslin & Fraiman, P.A. on February 9, 2007.

**6.** In the interim between motions, appellants had filed a new action against Dr. Breslin and his professional association under the auspices of C & JP § 5-119. Their subsequent case was endangered by the court's decision to grant summary judgment instead of dismissing their claim without prejudice.

**7.** The record suggests that appellants' appeal was delayed as a result of the court's failure to issue its Order to the parties until months after it had been entered.

a motion for summary judgment, a trial court may "enter judgment in favor of or against the moving party if the motion and response show there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f); *see Ross v. State Bd. of Elections,* 387 Md. 649, 659, 876 A.2d 692 (2005). Where there is no dispute of material fact, this Court's focus is on whether the trial court's grant of the motion was legally correct. *Laing v. Volkswagen of Am.,* 180 Md.App. 136, 152–53, 949 A.2d 26 (2008). In reviewing the grant of summary judgment, we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party, in this case, appellants. *Id; Green v. H & R Block,* 355 Md. 488, 502, 735 A.2d 1039 (1999).

The parties agree that the primary legal question in this case is one of statutory interpretation. This Court utilizes a *de novo* standard to analyze questions regarding a circuit court's interpretation of statutory provisions. *Maryland–National Capital Park and Planning Comm'n v. Anderson,* 395 Md. 172, 181, 909 A.2d 694 (2006); *Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111 (2005). "Although the factual determinations of the circuit court are afforded significant deference on review, its legal determinations are not." *Goss v. C.A.N. Wildlife Trust, Inc.,* 157 Md.App. 447, 456, 852 A.2d 996 (2004). "Where the order involves an interpretation and application of Maryland statutory and case law, we must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609 (2002).

## ANALYSIS

### I. THE STATUTORY SCHEME

█ In Maryland, the procedures for filing and litigating medical malpractice actions are established by the Maryland Healthcare Malpractice Claims Act, codified at Md.Code (1976, 2006 Repl.Vol., 2007 Supp.), § 3–2A–01 *et seq.* of the Courts

and Judicial Proceedings Article ("CJ") ("the Act"). The Act governs every aspect of medical malpractice claims filed in Maryland. CJ § 3–2A–02(a). The Act requires that all medical malpractice claims for amounts over the statutory limit be submitted to the Maryland Health Care Alternative Dispute Resolution Office (MHCADRO) for an initial assessment before the matter can be submitted to the courts. CJ § 3–2A–04(a). Significantly, any party may waive arbitration any time after the filing of a certificate, as they did in this case. CJ § 3–2A–06B. Within the Act are the two statutory provisions we must consider in the present appeal.

Section 3–2A–02 of the Act, entitled "Exclusiveness of Procedures," mandates that the provisions of the Act are the exclusive provisions governing the initiation of malpractice claims in Maryland. Of particular interest in the present appeal is CJ § 3–2A–02(c), providing in pertinent part:

(c) Establishing liability of health care provider; qualifications of persons testifying.—

(1) In any action for damages filed under this subtitle, the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

(2)(i) This paragraph applies to a claim or action filed on or after January 1, 2005.

(ii) 1. In addition to any other qualifications, a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:

A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related field of health care, or in the field of health care in which the defen-

dant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and

B. Except as provided in item 2 of this subparagraph, if the defendant is board certified in a specialty, shall be board certified in the same or a related specialty as the defendant.

2. Item (ii)1.B of this subparagraph does not apply if:

A. The defendant was providing care or treatment to the plaintiff unrelated to the area in which the defendant is board certified; or

B. The health care provider taught medicine in the defendant's specialty or a related field of health care.

Section 3–2A–04 of the Act is more procedural in nature, specifically setting out the methods by which claims under the Act shall be filed and decided. At issue in the present case is CJ § 3–2A–04(b), providing in relevant part:

(b) Filing and service of certificate of qualified expert.— Unless the sole issue in the claim is lack of informed consent:

(1)(i) 1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint. . . .

\*       \*       \*

(3)(i) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

(ii) Discovery is available as to the basis of the certificate.

CJ § 3–2A–04(b).

In *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 853 A.2d 813, *cert. denied*, 384 Md. 158, 862 A.2d 993 (2004),

this Court considered the appropriate sanction for the filing of a certificate that did not state that any of the 31 named defendants breached the standard of care, or that any such breach was the proximate cause of the alleged injuries; nor did the claimant attach a report from the attesting experts to their certificate, as required by CJ § 3–2A–04(b)(3). *Id.* at 635, 853 A.2d 813. We noted that submission of a fully compliant certificate was an indispensable step in the arbitration process; indeed, it was so important that, if the certificate requirement was not satisfied, a circuit court action should be dismissed, *sua sponte. Id.* at 645, 853 A.2d 813 (citation omitted). We further opined that the failure to file a certificate that satisfied all of the requirements of the Act was "tantamount to not having filed a certificate at all." *Id.* (citation omitted). We concluded that, in such case, the trial court's grant of the defendants' motions to dismiss the case without prejudice was appropriate. *Id.* at 652, 853 A.2d 813.

The Court of Appeals considered CJ § 3–2A–04(b)(3), which provides that a report of the attesting expert must be attached when a certificate is filed, in *Walzer v. Osborne,* 395 Md. 563, 911 A.2d 427 (2006). After reviewing the principles of statutory interpretation, and relevant cases, the Court, finding no ambiguity in the language of the statute, held that, if a party fails to comply with the requirements for filing a fully compliant certificate, dismissal without prejudice was mandated, without consideration for the harshness of the consequences that resulted. *Id.* at 577–81, 584–85, 911 A.2d 427.

In *Carroll v. Konits,* 400 Md. 167, 929 A.2d 19 (2007), the Court further clarified its holding in *Walzer,* stating that if a claimant fails to file a fully compliant certificate, a mandatory condition precedent to maintain the malpractice action has not been met, and dismissal is required by the statute. *Id.* at 181–82, 929 A.2d 19 (citing *McCready Memorial Hosp. v. Hauser,* 330 Md. 497, 512, 624 A.2d 1249 (1993); *Walzer, supra,* 395 Md. at 578, 911 A.2d 427; *Witte, supra,* 369 Md. at 533, 801 A.2d 160; *Goicochea v. Langworthy,* 345 Md. 719, 729, 694 A.2d 474 (1997)).

The *Carroll* Court further recognized that the provisions of CJ § 3–2A–02(c)(2)(ii), establishing the mandatory clinical experience requirements, must be considered as part of the determination of whether a certificate is fully compliant. *Id.* at 189–91, 929 A.2d 19; *see also Univ. of Md. Med. Sys. Corp. v. Waldt*, 411 Md. 207, 227–28, 983 A.2d 112 (2009) (utilizing the five year requirement of CJ § 3–2A–02(c) to interpret the "20 percent" rule of CJ § 3–2A–04(b)(7)). We interpret the Court's decision in *Carroll* as further emphasizing that the provisions of these two sections are inextricably intertwined.

Most recently, this Court considered the sufficiency of a Certificate of Merit in our decision in *Barber v. Catholic Health Initiatives, Inc.*, 180 Md.App. 409, 951 A.2d 857, *cert. denied*, 406 Md. 192, 957 A.2d 999 (2008). Considering the Court of Appeals' previous decisions, we reaffirmed that the Maryland Rules are generally applicable to all of the provisions of the statute. *Id.* at 416, 423, 951 A.2d 857 (citing this Court's previous opinion in the same case, which was remanded by the Court of Appeals in light of its decision in *Carroll, supra* ).

## II. CONSTRUCTION OF THE STATUTE

The facts of this case are not in dispute. The parties agree that, under the provisions of the Act set forth above, Dr. Burt, an anesthesiologist, was not a qualified expert to opine upon the standard of care applicable to Dr. Breslin, a vascular surgeon.[8] The only question before us in this appeal is whether Dr. Burt's failure to meet the enumerated certification qualifications of CJ § 3–2A–02(c)(2)(ii) justifies the circuit court's grant of summary judgment, or whether the circuit court, under the provisions of CJ § 3–2A–04(b)(1)(i)(1), was

---

**8.** Appellants argued in the court below that physicians in any number of specialties would be qualified to opine generally on the standard of care for diagnosing and treating an epidural hematoma, and/or a postoperative patient exhibiting symptoms including paralysis. This issue was not raised in the appeal; therefore, we need not address it.

required to dismiss the action without prejudice. The question before us is purely one of statutory interpretation.

The Court of Appeals set forth the principles of statutory interpretation in *Walzer, supra,* 395 Md. at 572–74, 911 A.2d 427 (footnote omitted), also in the context of the Act:

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Mayor of Oakland v. Mayor of Mt. Lake Park,* 392 Md. 301, 316 [896 A.2d 1036] (2006); *Chow v. State,* 393 Md. 431, 443 [903 A.2d 388] (2006) (citations omitted); *see also Johnson v. Mayor of Balt. City,* 387 Md. 1, 11 [874 A.2d 439] (2005); *Moore v. State,* 388 Md. 446, 452 [879 A.2d 1111] (2005); *O'Connor v. Balt. County,* 382 Md. 102, 113 [854 A.2d 1191] (2004); *Mayor of Balt. v. Chase,* 360 Md. 121, 128 [756 A.2d 987] (2000).

As this Court has explained, "[t]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning." *State Dept. of Assessments and Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n,* 348 Md. 2, 13 [702 A.2d 690] (1997); *Montgomery County v. Buckman,* 333 Md. 516, 523 [636 A.2d 448] (1994); *see also Chow,* 393 Md. at 443 [903 A.2d 388] (stating that "[s]tatutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology") (citations omitted). We do so "on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte v. Azarian,* 369 Md. 518, 525 [801 A.2d 160] (2002). "When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent." *Marriott Employees Fed. Credit Union v. MVA,* 346 Md. 437, 445 [697 A.2d 455] (1997). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261 [647 A.2d 1204] (1994). In addition, "[w]e neither add nor delete words to a clear and unambigu-

ous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181 [776 A.2d 645] (2001); *see Chow,* 393 Md. at 443 [903 A.2d 388]. " 'If there is no ambiguity in th[e] language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends. . . .' " *Chow,* 393 Md. at 443–44 [903 A.2d 388].

If the language of the statute is ambiguous, however, then "courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration]." *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174 [680 A.2d 1052] (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75 [517 A.2d 730] (1986)). We have said that there is " 'an ambiguity within [a] statute' " when there exist " 'two or more reasonable alternative interpretations of the statute.' " *Chow,* 393 Md. at 444 [903 A.2d 388] (citations omitted). When a statute can be interpreted in more than one way, " 'the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.' " *Id.*

If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia— among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

*Witte,* 369 Md. at 525–26 [801 A.2d 160]. In construing a statute, "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense."

*Blake v. State,* [395] Md. [213, 909 A.2d 1020 (2006) ] (citing *Gwin v. MVA,* 385 Md. 440, 462 [869 A.2d 822] (2005)); *see Frost v. State,* 336 Md. 125, 137 [647 A.2d 106] (1994).

In addition, " 'the meaning of the plainest language is controlled by the context in which it appears.' " *State v. Pagano,* 341 Md. 129, 133 [669 A.2d 1339] (1996) (citations omitted). As this Court has stated,

> [b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Gordon Family P'ship v. Gar On Jer,* 348 Md. 129, 138 [702 A.2d 753] (1997) (citations omitted). Lastly, "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Gleaton v. State,* 235 Md. 271, 277 [201 A.2d 353] (1964); *See generally Robinson v. State,* 353 Md. 683 [728 A.2d 698] (1994)(discussing the proposition that statutes in derogation of the common law are to be construed narrowly, so as to not make any change in the common law beyond that which is expressly stated and necessary). " '[B]ecause statutes in derogation of the common law are disfavored, the maxim *expressio unius est exclusio alterius* has been extensively employed to avoid repeal of the common law, and refuted in order to make the statute cumulative with it.' " *Waters v. State,* 220 Md. 337, 356–57 [152 A.2d 811] (1959) (citations omitted). "Most statutes, of course, change the common law, so that principle [of narrow construction] necessarily bends when there is a clear legislative intent to make a change." *Witte,* 369 Md. at 533 [801 A.2d 160].

We shall, as directed by the *Walzer* Court, begin with an examination of the plain language of the statutory provisions relevant to the current appeal.

It is axiomatic that a statute should be read as a whole, and that each word should be given its ordinary meaning. Separate sections of the same act should not be interpreted to contradict each other. Nor should our interpretation of one section render another nugatory. *See Walzer, supra,* 395 Md. at 572–74, 911 A.2d 427.

■ In order to submit a certificate in compliance with all of the requirements of the Act, a party would necessarily refer to both CJ § 3–2A–02 and CJ § 3–2A–04. When read together, those sections of the Act define not only the qualifications required of an attesting expert, but also delineate the requirements as to the form, content, necessary attachments, and time lines for filing a fully compliant certificate.

Section 3–2A–04(b)(1)(i)(1) provides that the sanction for failing to file a "certificate of a qualified expert" is dismissal of the action without prejudice. The language of the statute requiring that the claimant submit a "certificate of a qualified expert" is the practical basis for use of "Certificate of Qualified Expert" as the generally accepted title of the document that must be submitted in support of a medical malpractice claim. More importantly, the plain meaning of the phrase, "certificate of a qualified expert," emphasizes that, to be compliant with the requirements of the statute, a certificate must be signed by an expert who is **qualified** as defined by the Act. CJ § 3–2A–04(b)(1)(i)(1).

In order to be deemed "qualified," an expert who attests to the applicable standard of care and proximate causation, either in a certificate or at trial, must satisfy all of the requirements of CJ § 3–2A–02(c)(2)(ii), "**[i]n addition to any other qualifications**" provided for in the Act. CJ § 3–2A–02(c)(2)(ii)(1) (emphasis added). The "other qualifications" referenced in the plain language of CJ § 3–2A–02(c)(2)(ii)(1) are those defined in CJ § 3–2A–04(b)(4), providing that a qualified expert may not allot more than 20 percent of his professional activities to providing testimony in personal injury claims; a party to the litigation may not act as an expert; and a certificate may not be signed by a party to the litigation,

nor by any employee or partner of a party. There is no express requirement that the expert's qualifications be stated in the certificate. *See Kinsey v. Women's Surgery Ctr. LLC,* 584 F.Supp.2d 746, 749 (2008) (considering whether an attestation that the expert satisfies the 20 percent requirement must be included in a fully compliant certificate). However, discovery is available so that an opposing party may ascertain the legitimacy of the certificate, and the qualifications of the attestor. CJ § 3–2A–04(b)(3)(ii)(d).

We see no logic in the suggestion that an expert's failure to satisfy the requirements regarding clinical experience and areas of specialty certification required by CJ § 3–2A–02(c)(2)(ii) should be treated differently than an expert's failure to satisfy the requirement of the 20 percent rule, or the requirement that a certifying expert may not be a party or an employee or partner of a party delineated in CJ § 3–2A–04(b), or, for that matter, any of the requirements as to the form and filing of a certificate. To adopt such an approach would be an endorsement of an interpretation of the statute which imposes inconsistent sanctions for the filing of noncompliant certificates that are deficient based upon the requirements in different sections of the Act. No such dichotomy is expressly included in the language of the Act, and we decline the opportunity to judicially impose such distinction.

We are reminded that, in *D'Angelo, supra,* we opined that "failure to file a proper certificate is tantamount to not having filed a certificate at all." 157 Md.App. at 644, 853 A.2d 813. It follows, therefore, that if failure to file a certificate warrants dismissal without prejudice, the failure to file a compliant certificate ought not result in the application of the more draconian sanction of summary judgment or dismissal with prejudice.

In our interpretation of the plain language of the statute, we conclude that the sanction for the failure to submit a fully compliant certificate—whether the failure is in form, content or qualifications of the attesting expert—is dismissal without prejudice. *See* CJ § 3–2A–04(b)(1)(i)(1). Thus, we

hold that the circuit court erred in granting appellees' Motion for Summary Judgment when dismissal without prejudice was the statutorily mandated remedy for appellants' failure to file a compliant certificate. Because we find no ambiguity in the language of the statute, we need not resort to any additional methods of statutory interpretation. *See Walzer, supra,* 395 Md. at 572, 911 A.2d 427.

■ Our holding is consistent with precedents established in prior cases of this Court and the Court of Appeals. As we have noted, the filing of a fully compliant certificate is a condition precedent to bringing a medical malpractice action in the State of Maryland. *Carroll, supra,* 400 Md. at 181–82, 929 A.2d 19. In *Carroll,* the Court of Appeals addressed the mandatory nature of conditions precedent, stating:

In *Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59 [904 A.2d 511] (2006), we discussed the mandatory nature of conditions precedent, albeit in a different context. There we said:

" '[A] condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied. This requirement of strict or substantial compliance with a condition precedent is of course subject to abrogation by the General Assembly.' "

*Georgia–Pacific Corp.,* 394 Md. at 84 [904 A.2d 511] (quoting *Rios v. Montgomery County,* 386 Md. 104, 127–28 [872 A.2d 1] (2005)....)

*Carroll, supra,* 400 Md. at 182 n. 12, 929 A.2d 19.

The undisputed facts before the circuit court established, and, indeed, appellants concede, that Dr. Burt, an anesthesiologist, was not qualified as defined under CJ § 3–2A–02(c)(2)(ii), to attest to the applicable standard of care for a vascular surgeon, or to opine upon whether Dr. Breslin's actions conformed to that standard. *See* CJ § 3–2A–02(c)(2)(ii). Because appellants failed to submit a certificate that satisfied all of the requirements of the Act, a mandatory condition precedent for the maintenance of appellants' medical

malpractice action in the circuit court was not fulfilled. *See Carroll, supra,* 400 Md. at 181–82, 929 A.2d 19.

After the court's initial order granting summary judgment, the court, at the hearing on appellees' Motion to Alter or Amend the Judgment *Nunc Pro Tunc,* further clarified that it granted summary judgement rather than dismissal without prejudice, in part, because it had considered evidence outside of the pleadings.

The plain language of CJ § 3–2A–04(b)(3)(i)(2) provides that "[d]iscovery is available as to the basis of the [certificate]." This language clearly contemplates that consideration of evidence outside of the pleadings may be necessary to assess the sufficiency of a certificate. Within the same subsection, however, the Legislature mandated that the failure to file a certificate shall result in dismissal of the claim without prejudice. CJ § 3–2A–04(b)(1)(i)(1). These provisions, taken together, lead to a conclusion that this case presents as exception to the general proposition contained in Md. Rule 2–322(c), which provides that if matters outside of the pleadings are presented in a motion to dismiss, the motion shall be treated as one for summary judgment.[9] Maryland Rule 2–322(c); *Brown v. Mayor & City Council,* 167 Md.App. 306, 317, 892 A.2d 1173, *cert. denied,* 393 Md. 243, 900 A.2d 749 (2006); *Vogel v. Touhey,* 151 Md.App. 682, 704 n. 7, 828 A.2d 268, *cert. denied,* 378 Md. 617, 837 A.2d 927 (2003); *Freeburger v. Bichell,* 135 Md.App. 680, 685, 763 A.2d 1226 (2000).

■ We recognize, however, that the provisions of a statute trump the provisions of a Rule so long as the statute was, as in this case, enacted later than the Rule. *Howsare v. State,* 185 Md.App. 369, 384, 970 A.2d 951 (2009) (citing *James v. Butler,* 378 Md. 683, 692–93, 838 A.2d 1180 (2003)). Because in the

---

**9.** As appellees repeatedly note, we acknowledge that CJ § 3–2A–02(d) dictates that the Maryland Rules, including those applicable to summary judgement, "apply to all practice and procedure issues arising under this subtitle." We further note, however, that this provision actually provides that the Maryland Rules shall apply to the entire Act, not just to CJ § 3–2A–02, as characterized by appellees.

instant case the statute prevails, the circuit court was bound by the express language of the statute mandating dismissal without prejudice, despite the fact that the court considered matters beyond the facts alleged in the pleadings in reaching its decision. *See id.*

The court, in its Memorandum of Decision denying appellants' Motion to Alter or Amend Judgment *Nunc Pro Tunc,* filed on March 11, 2008, reasoned that, because the certificate was deficient, appellants did not produce an expert who was qualified to attest to the applicable standard of care and the manner in which Dr. Breslin was alleged to have breached it. Thus, appellees argued, and the court concluded, Dr. Breslin could not have been liable because CJ § 3–2A–02(c)(1) provides that a health care provider "is not liable for the payment of damages" unless it is established that the health care provider breached the standard of care. Therefore, the court concluded, summary judgment was justified on the merits.

Section 3–2A–02(c)(1) provides that the ultimate question of fact to be determined in a medical malpractice action is whether the care provided by the defendant health care provider was in accordance with the applicable standard of care. CJ § 3–2A–02(c)(1). This question is completely separate from the preliminary determination of whether the complainant satisfied the condition precedent by filing a compliant certificate. *See, e.g., Robinson v. Pleet,* 76 Md.App. 173, 180, 544 A.2d 1, *cert. denied,* 313 Md. 689, 548 A.2d 128 (1988), *superceded by statute, Navarro–Monzo v. Wash. Adventist Hosp.,* 380 Md. 195, 844 A.2d 406 (2004) (noting, "the ultimate merit of the claim is irrelevant if the claimant failed to comply with the statute."). The realization that appellants' certificate was fatally flawed, and thus not in compliance with statutory requirements, ought to have ended the circuit court's inquiry.

The court also applied the maxim *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of another thing not mentioned. Thus, the court reasoned, in the absence of an express provision in CJ § 3–2A–02 mandating a sanction of dismissal without prejudice,

disposition by way of summary judgment was appropriate. The court further reasoned that, if the Legislature intended dismissal without prejudice to be the only possible sanction for the failure to comply with the expert qualification requirements contained in CJ § 3–2A–02(c), such would have been expressly provided.

In *Walzer*, the Court of Appeals noted that the Legislature included the language expressly mandating dismissal without prejudice for failing to file a certificate in CJ § 3–2A–04(b)(1)(i), but did not include a similar provision in CJ § 3–2A–04(b)(3), requiring the attachment of the attesting expert's report to the certificate. *Walzer, supra,* 395 Md. at 577–78, 911 A.2d 427. The Court rejected application of the maxim *expression unius est exclusion alterius,* however, cautioning:

> [T]he maxim *'expressio unius est exclusio alterius'* . . . meaning that the expression of one thing implies the exclusion of another thing not mentioned, is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used. It should be used with caution, and should never be applied to override the manifest intention of the Legislature or a provision of the Constitution. . . .

*Id.* at 579, 911 A.2d 427 (quoting *Hylton v. Mayor and City Council of Balt.,* 268 Md. 266, 282, 300 A.2d 656 (1972), which quotes, in turn, *Kirkwood v. Provident Savings Bank of Balt.,* 205 Md. 48, 55, 106 A.2d 103 (1954)).

■ The *Walzer* Court concluded that the language of the statute was clear and unambiguous, thus there was no need to adhere to this maxim, or to evaluate other methods for discerning the Legislature's intentions. *Id.* at 579–80, 81, 911 A.2d 427 ("Because the language of the Statute is clear and its meaning unambiguous, we need not, and should not, look beyond the Statute.") "If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends." *Chow, supra,* 393 Md. at 443, 903 A.2d 388.

In the case before us, we have likewise concluded that the language of the Act is clear and its meaning unambiguous. Thus, we need not, and should not, consider other methods of statutory interpretation for discerning the intentions of the Legislature, including application of the maxim. *Id.* at 581, 911 A.2d 427 (citing *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994)). Moreover, the dismissal without prejudice provision of CJ § 3–2A–04(b)(1)(i)(1) has been part of the Act since its amendment in 1986. Therefore, there was no need for the Legislature to include redundant dismissal without prejudice language in CJ § 3–2A–02(c), which was not added to the Act until 2004. *See* CJ § 3–2A–02; CJ § 3–2A–04 (noting the dates these provisions were adopted by the legislature, and all the substantive amendments that have been made to them since their adoption); *Carroll, supra,* 400 Md. at 199–200, 929 A.2d 19.

Appellees' suggested interpretation of the Act, that a penalty other than dismissal without prejudice is appropriate for a claimant's failure to submit a fully compliant certificate, would render the dismissal without prejudice language, expressly included as the penalty for failing to produce a certificate from a qualified expert, nugatory in cases where the expert was not qualified due to a failure to meet the requirements in CJ § 3–2A–02(c). Such a result would be untenable. *See Walzer, supra,* 395 Md. at 572–74, 911 A.2d 427.

Finally, we note appellees' argument that their preferred interpretation is most consistent with the stated purpose of the Act, which is to weed out non-meritorious malpractice claims. *See, e.g., D'Angelo, supra,* 157 Md.App. at 645, 853 A.2d 813. Without opining upon the merits of appellants' negligence claim, we suggest that any interpretation of the Act should serve to protect the interests of all parties to the action.

### III. THE CONSTITUTIONAL ARGUMENT

Appellants also raise a constitutional question, suggesting that the language of the Act is void for vagueness. It is

well settled, however, that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground. *See Smith v. State,* 399 Md. 565, 570 n. 4, 924 A.2d 1175 (2007); *Dept. of Corrections v. Henderson,* 351 Md. 438, 451, 718 A.2d 1150 (1998); *Professional Nurses v. Dimensions,* 346 Md. 132, 138, 695 A.2d 158 (1997); *State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453 (1993). Because we shall reverse and remand this case on a non-constitutional ground, we need not consider appellant's constitutional argument.

For the foregoing reasons, we conclude that the circuit court erred in granting summary judgment in favor of appellees and instead should have entered an order dismissing the case without prejudice. *See* CJ § 3–2A–04(b)(1)(i)(1).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**