552 A.2d 908

## AETNA CASUALTY & SURETY COMPANY

v.

## Theodore SOURAS.

No. 125, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Feb. 1, 1989.

72

Michael McGowan (McCarthy, Bacon, Costello & Stephens, Landover, for appellant.

Russell J. Gaspar (Hanna, Gaspar, Osborne & Birkel, on the brief, Washington, D.C., John P. Roth and Schmidt, Roth, Freda & Carroccio, Rockville, on the brief), for appellee.

Argued before MOYLAN, GARRITY, and JAMES S. GETTY (retired, Specially Assigned), JJ.

GARRITY, Judge.

The appellee, Theodore Souras, a passenger in Angelos Poulos' vehicle, brought suit against Aetna Casualty and Surety Company (Aetna), maintaining that he was wrongfully denied coverage under the uninsured motorist provisions of a policy issued to Poulos. The Circuit Court for Montgomery County (Cave, J.) granted summary judgment in the appellee's favor and awarded him $25,000, from which judgment the appellant appeals. The appellee cross-appeals on the grounds of inadequacy of award.

*Facts*

On August 8, 1982 the appellee was injured in an automobile accident in Falls Church, Virginia, while a passenger in a vehicle operated by Poulos of Gaithersburg, Maryland. The Poulos vehicle was registered and kept in the State of Maryland and was insured by Aetna under an automobile liability insurance policy issued and delivered in Wheaton, Maryland. The policy contained an uninsured motorist endorsement in the amount of $50,000.

Shortly after the accident, the appellee submitted claims to Aetna under the personal injury protection provisions of the policy, which Aetna paid. Thereafter, the appellee brought suit in the Circuit Court for Arlington County,

Virginia, against Timothy Reich, who was driving the car that collided with Poulos' vehicle.. During the pendency of the Reich suit, the appellee also brought suit in Arlington County against Poulos under a claim of contributory negligence. Aetna successfully defended Poulos in this action.

The case against Reich proceeded to trial and on February 15, 1985, judgment was entered on a jury verdict in favor of the appellee for $66,905.90. Reich's insurance carrier paid $25,000 of that judgment. Reich, however, has made no further payments as he is virtually impecunious.

In April, 1985, the appellee submitted to Aetna a claim under the uninsured motorist provision of Poulos' policy to satisfy the remainder of the judgment. Aetna denied the claim. Suit was brought and summary judgment was entered for $25,000, the difference between uninsured motorist coverage and the amount recovered from the tortfeasor's insurer.

On appeal, Aetna initially argues that the Reich vehicle was not an uninsured auto under Maryland law and, therefore, the provisions of the policy are not applicable. Aetna also contends that there was insufficient evidence of the policy before the trial judge to decide a summary judgment motion. Lastly, Aetna contends that the notice was not legally sufficient to satisfy due process standards.

In his cross-appeal, Souras refutes the above arguments and further maintains that the judgment should have been entered for $41,905.90, the amount of the original judgment minus the insurance paid by Reich's carrier.

I.

Although Aetna contends that summary judgment was improperly granted because there was a genuine dispute as to a material fact, Aetna advances arguments suggesting that only legal issues are in dispute.

Aetna initially argues that the Reich automobile was not "uninsured" as that term is defined by applicable Maryland

law because Reich had a maximum of $25,000 worth of insurance. We disagree and explain.

Md.Ann. Code art. 48A, § 541(c)(1) (1986 Repl.Vol.), provides that an "uninsured motor vehicle" is one

for which the sum of the limits of liability under all valid and collectible liability insurance policies ... applicable to the bodily injury or death *is less than the amount of coverage provided to the insured under this subsection.* (emphasis added).

Subsection (c)(2) provides that a motor vehicle liability policy issued in Maryland *must* contain uninsured motorist coverage for bodily injury or death at least equal to the $20,000 minimum liability coverage requirements of § 17–103(b) of the Transportation Article, but also provides that the insured shall have "the opportunity to contract for higher amounts than those provided under Title 17 ..."

Pursuant to these provisions, Poulos contracted with Aetna on September 22, 1981, for "uninsured motorist coverage of $50,000, each accident," substantially in excess of the minimum requirements of Title 17. Reich's total liability insurance was limited to $25,000—less than the amount of uninsured motorist coverage provided by Aetna to Poulos. Thus, on August 8, 1982, it is clear that Reich was driving an "uninsured motor vehicle" as defined by Maryland law in the above cited statute because the insurance coverage provided to Reich was less than the *uninsured* motorist coverage provided to Poulos.

Because Poulos was provided coverage under the uninsured motorist provisions of his policy, the appellee, as a passenger in his car, was also a "covered person" under that policy.[1]

Although Section 541(c) refers to "uninsured motorist" coverage, it is clear that its provisions operate as *underin-*

---

**1.** The Aetna policy defined "covered person," in pertinent part, as:
  1. You or any family member.
  2. Any other person occupying your covered auto.

*sured* motorist coverage to the extent that the person responsible for an accident has less liability coverage than the insured under the uninsured provisions of his own policy. *Hoffman v. United Services Auto Ass'n,* 309 Md. 167, 178, 522 A.2d 1320 (1987).[2] Thus, Aetna's arguments concerning the fact that Reich had liability coverage in excess of the Maryland minimum are irrelevant. The only consideration relevant to Aetna's liability on the policy is whether its uninsured motorist coverage provided higher limits than Reich's own liability insurance.

Aetna also contends that a factual dispute exists as to the amount of coverage provided under the policy. Aetna ignores the fact that in the request for admissions, the appellee stated that the uninsured motorist coverage was $50,000 and Aetna replied, "The policy speaks for itself. A copy is attached." The policy shows uninsured motorist coverage to the extent of $50,000.

Consequently, we believe that, contrary to Aetna's assertion that the evidence before the trial judge was not sufficient for him to render an opinion, the policy, declarations page, and admission that the uninsured motorist coverage was in the amount of $50,000, was legally sufficient to allow the trial judge to make his determination.

## II.

Aetna maintains that the appellee was required to comply with the Code of Virginia, § 38.1–381(el)[3] which requires a claimant to notify the insurer of any pending suit in instances where the claimant intends to rely on the uninsured

---

**2.** Our indication to the contrary in *Christensen v. Wausau Ins. Companies,* 69 Md.App. 696, 519 A.2d 776 (1987), decided prior to *Hoffman* is expressly overruled.

**3.** Virginia law relating to insurance was recodified effective July 1, 1986. References in this opinion are to the former sections of the Virginia Code in force at the time of the accident and related litigation. The uninsured motorist provisions now appear principally in § 38.2–2206 of the Code; the notice provision specifically at issue has been recodified as § 38.2–2206(F).

motorist coverage required by subsection (b) of the statute. A perusal of § 38.1–381(a), however, reveals that the statutory requirements to notify the insurer apply only to policies issued and delivered in the State of Virginia.

Maryland follows the rule of *lex locus contractu,* which requires looking to the law of the place where the contract was made to determine questions of its validity and construction. *Traylor v. Grafton,* 273 Md. 649, 660, 332 A.2d 651 (1975). The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid. *Sun Insurance Office v. Mallick,* 160 Md. 71, 81, 153 A. 35 (1931). Thus, Maryland law governs.

It is settled law that considerations of due process require notice in order for an insurer to be bound by the outcome of the tort action. *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 749 n. 12, 436 A.2d 465 (1981). In the instant case, although no formal notice was given, Aetna admitted in the request for admissions that it was aware of appellee's suit against both Reich and its insured, Poulos, prior to both trials. In fact, Aetna was aware of the extent of appellee's injuries because it had paid the ensuing medical expenses pursuant to the provisions of its policy. As appellee points out in his brief, and as the trial court found, the combination of these facts clearly indicated that Aetna's coverage under the policy was at stake, and alerted Aetna to the need to protect its interest.

### III.

The appellee maintains that the trial judge incorrectly calculated the amount of coverage due him under the policy and cites *Christensen v. Wausau Ins. Companies,* 69 Md.App. 696, 519 A.2d 776 (1987), for the proposition that he was entitled to recover the judgment deficiency of approximately $41,000. We believe *Christensen* is distinguishable from the instant case, however. In *Christensen,* the appellant received a settlement of $20,000 from the tort-feasor's insurer and then filed a claim with his insurer

under the two endorsement policies contained within his insurance policy. The first endorsement provided for uninsured motorist coverage in the amount of $20,000 for bodily injury while the second contained a supplemental "underinsured motorist" provision providing for the same amount of coverage in instances where the tort-feasor is underinsured. The insurer defended on the ground that the appellant had received a settlement of $20,000, which disqualified him for uninsured motorist coverage under the policy because the policy defined an uninsured motorist as having less than $20,000 in available coverage. The insurer went on to argue that in calculating the amount due under the supplemental policy the trial judge was required to subtract the settlement amount of $20,000 from the supplemental coverage amount of $20,000 which would have left the appellant without coverage under the supplemental policy. Speaking on our behalf, Judge Weant opined that the language of the underinsured motorist endorsement should not be construed so as to make the supplemental coverage illusory. *Id.* at 699, 519 A.2d 776.

In the case at bar, we are dealing with the uninsured motorist provisions of the policy and not a supplemental underinsured provision as in *Christensen.* Md.Code Ann. art. 48A, § 541(c)(3) provides a formula for calculating the amount of uninsured motorist coverage and therefore governs how the amount of uninsured motorist coverage is to be calculated in this instance.

Section 541(c)(3) of the above cited Article, provides:

(c) The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

In calculating the amount due to the appellee in this case, the trial judge correctly applied the statute by subtracting the $25,000 received from the tort-feasor's insurer from the $50,000 uninsured motorist coverage provided under the policy.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-
PELLANT.