584 A.2d 137

**COLONIAL INSURANCE COMPANY OF CALIFORNIA**

v.

**Troy Edward BATSON, et al.**

**No. 403, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 18, 1991.

Mary S. Akerley (Sasscer, Clagett, Channing & Bucher, on the brief), Upper Marlboro, for appellant.

Robert W. Guth (John E. Sandbower, III, Sandbower, Gabler & O'Shaughnessy, P.A. and David Kimmelman, on the brief), Baltimore, for appellees.

Argued before MOYLAN, BLOOM, and JAMES S. GETTY (Retired, Specially Assigned), JJ.

BLOOM, Judge.

Following a hearing on motions for summary judgment filed by both parties, the Circuit Court for Dorchester County determined that appellee, Troy Edward Batson, was entitled to recover underinsured motorist benefits under a policy of insurance issued to his father by appellant, Colonial Insurance Company of California. The court entered summary judgment in favor of appellee against appellant for the sum of $20,000. This appeal is from that judgment.

Based on our reading of the policy and the undisputed facts, we reach a different conclusion from that reached by the circuit court. Accordingly, we shall reverse the judgment and remand with instructions to enter summary judgment for appellant.

### Facts

While driving his father's car on 19 July 1986, appellee was involved in a head-on collision, in which he sustained serious injuries. The driver of the other vehicle was later convicted of failure to yield the right-of-way and failure to keep to the right of center.

The vehicle with which appellee's car collided was insured by State Farm Automobile Insurance Company. The driver of that car was insured by Globe American Casualty Company. Although both of those carriers initially denied coverage for reasons not relevant to this case, they each reversed that position and settled with appellee by paying its policy limits to him. Appellee received a total of $70,000;

$50,000 from State Farm and $20,000 from Globe American. It is undisputed that appellee's damages were in excess of $90,000.

Appellee's father had an insurance policy with appellant which provided uninsured/underinsured motorist ("UM/UIM") benefits in the amount of $20,000 for personal injury to a single individual. Appellee claimed that because his actual damages exceeded the benefits available under the tortfeasors' policies and the Colonial policy combined, he was entitled to the full amount of the Colonial UIM coverage.

Colonial denied the claim, asserting that it was relieved of any obligation to pay UIM benefits because the other available coverage exceeded the insured's limits of his own policy.

Appellee filed suit against Colonial and the driver and owner of the other vehicle. His complaint originally contained four counts:

Count I alleged negligence by Charles E. Hubbard and vicarious liability therfor by Bonnie Sue Harrison, the driver and owner, respectively, of the other vehicle.

Count II alleged negligent entrustment of her car to Hubbard by Harrison.

Count III sought recovery of uninsured motorist benefits from Colonial.

Count IV sought recovery of underinsured motorist benefits from Colonial.

Appellee dismissed his claim against Hubbard and Harrison with prejudice after receiving payments from State Farm and Globe American.

In appellee's motion for summary judgment, he conceded that, since the driver and owner of the other car were insured, he no longer had a claim for uninsured motorist benefits and therefore was not seeking summary judgment as to Count III.

With respect to Count IV, both sides moved for summary judgment. The trial court concluded that the underinsured

motorist provision of appellee's father's insurance policy was applicable to the case *sub judice,* and, there being no dispute as to any material fact, granted summary judgment in favor of appellee in the amount of $20,000.

Asserting error in that ruling, appellant contends:

1. An injured party who has been compensated by the responsible parties' insurers, in an amount greater than the limits of his own underinsured motorist coverage, has no claim under the UIM provision of his own policy;

2. The coverage provided by the Colonial policy is, in form and substance, perfectly in accord with the public policy of Maryland.

█ We begin our analysis by noting that insurers have a right to limit their liability and to impose whatever condition they please in a policy so long as neither the limitation on liability nor the condition contravenes a statutory inhibition or the state's public policy. *Walther v. Allstate Insurance Co.,* 83 Md.App. 405, 575 A.2d 339 (1990).

Md.Ann.Code art. 48A, § 541(c)(1) (1986 Repl.Vol.) provides that an "uninsured motor vehicle" is one

for which the sum of the limits of liability under all valid and collectible liability insurance policies ... applicable to the bodily injury or death is less than the amount of coverage provided to the insured under this subsection.

Subsection (c)(2) provides that every motor vehicle liability insurance policy issued in Maryland must contain uninsured motorist coverage in an amount at least equal to the $20,000 minimum liability coverage requirements of § 17–103(b) of the Transportation Article. *Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 171, 522 A.2d 1320 (1987); *Aetna Cas. & Sur. Co. v. Souras,* 78 Md.App. 71, 75, 552 A.2d 908 (1989).

According to the Court of Appeals, "the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tort-feasor complied with the minimum requirements of

the financial responsibility law.'" *Hoffman v. United Services Auto. Ass'n, supra,* [309 Md.] at 172, 522 A.2d 1320 [citing *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 737, 436 A.2d 465 (1981)]. "This mandatory coverage has the 'purpose of providing minimum protection to individuals injured by uninsured motorists.'" *Id.,* [citing *Yarmuth v. Gov't Employees Ins. Co.,* 286 Md. 256, 264, 407 A.2d 315 (1979)].

Appellant contends that the Batsons had the statutorily required minimum UM/UIM coverage of $20,000 for personal injuries to an individual. And, because the injured party received exactly that much from one insurance carrier and two and one-half times that much from the other carrier, he is not entitled to compensation under his father's UIM coverage with Colonial.

Appellee, on the other hand, asserts that appellant's interpretation of its policy should be rejected because it attempts to restrict the Batsons' UIM coverage to "the insured's own uninsured motorist limits" and violates several standard rules of contract construction, including that Colonial's policy makes underinsured motorist coverage "for which an additional premium was paid" illusory, and fails to make its intention to limit the coverage clear. We disagree with each of appellee's contentions and will deal with them below.

## I.

■ Appellee cites *Hoffman v. United Services Auto. Ass'n, supra,* for the general proposition that "UIM is a supplemental endorsement extending coverage beyond the traditional uninsured situation." While this statement of the case is correct, the facts of *Hoffman* are such that reliance on this language to bolster appellee's argument that his underinsured motorist coverage should not be subjected to the limits of his uninsured motorist coverage is a misapplication of that case. We shall briefly outline *Hoffman* in order to dispel any further reliance in this vein.

The Hoffmans were passengers in a car that collided with another vehicle, killing Mrs. Hoffman and seriously injuring Mr. Hoffman. The car in which they were riding was insured by Hanover Insurance Company and had underinsured motorists coverage in the amount of $50,000/$100,000. The other car was insured by Travelers Insurance Company and had the minimum required liability coverage of $20,000/$40,000. The driver of the other car, therefore, was not an uninsured motorist, but in terms of the Hanover Insurance Company policy he was an underinsured motorist. The Hoffmans' own automobiles were insured by United Services Automobile Association (USAA).

The estate of Mrs. Hoffman received $20,000 from Travelers and $30,000 from Hanover's underinsured motorist coverage. Mr. Hoffman also received a sum in settlement. Mr. Hoffman then individually and as personal representative of his wife's estate sued USAA to obtain benefits under the supplementary endorsement relating to underinsured motorists for both his cars. According to the declarations page the Hoffmans had purchased uninsured motorist coverage in the amount of $300,000/$500,000 per car.

The issue in *Hoffman* was whether USAA had expressly extended coverage from the traditional uninsured motorist situation to the underinsured motorist situation. The Court of Appeals held that by virtue of a second endorsement entitled "Supplementary Uninsured Motorists Insurance (Bodily Injury–Property Damage–Limits–Underinsured Motorists)", they had.

The fact that Hoffman had already recovered the amount of the statutory minimum policy from another insurer was irrelevant because, according to the Court, the USAA policy did not purport to provide the same coverage as was dealt with in prior decisions where each policy provided only the minimum statutorily required coverage. 309 Md. at 176, 522 A.2d 1320. USAA provided insurance in a greater amount ($300,000/$500,000) for uninsured and underinsured situations.

Despite the language on the face sheet of Colonial's policy that uninsured motorist coverage included underinsured motorist coverage as well, that policy, unlike the policy issued by USAA to the Hoffmans, provided UM/UIM coverage only to the statutory minimum of $20,000/$40,000.

According to the Court of Appeals, "the language of § 543(a) supports a construction of the section whereby an additional recovery under the required minimum Uninsured Motorist coverage of a second policy is precluded, but a recovery under the optional excess Underinsured Motorists coverage of a second policy is not precluded." *Id.* at 177, 522 A.2d 1320. Furthermore, "§ 541(f) clearly allows 'excess uninsured' or 'underinsured' motorists coverage ..." *Hoffman,* 309 Md. at 179, 522 A.2d 1320.

The term "excess uninsured" coverage as used in *Hoffman* does not mean, as appellee urges, coverage in excess of other available insurance; it means excess uninsured motorist coverage or coverage in excess of the uninsured motorist coverages required by law ($20,000/$40,000).

Appellee asserts that Colonial's definition of an underinsured motor vehicle is an attempt to restrict its UIM coverage and conflicts with Maryland law. Appellee's insurance policy states the following:

UNDERINSURED MOTORISTS INSURANCE

We will pay all sums for bodily injury and property damage that you or your legal representative are legally entitled to recover as damages from the owner or driver of the underinsured motor vehicle, subject to the limits of Uninsured Motorist Insurance shown on the declarations page, *when* your Uninsured Motorist Insurance limits exceed the bodily injury or property damage limits of the other vehicle. [Emphasis added]

In attempting to explain his rationale for insisting that this provision conflicts with Maryland law, appellee states that

Under Article 48A, Section 541 (already a part of the contract) a vehicle whose liability insurance limits covering bodily injury and property damage is less than the

insured's own UM coverage is "uninsured" and not "underinsured." For that reason Colonial's implicit definition of an "underinsured motor vehicle" must be rejected. UIM is thus left undefined by the policy.

Appellee relies upon, and his position is entirely in accordance with, our opinion in *Christensen v. Wausau Insurance Company*, 69 Md.App. 696, 519 A.2d 776 (1987), in which we held that a tortfeasor whose liability insurance coverage was less than the damages suffered by the injured party was "underinsured" within the meaning of the injured party's insurance policy containing underinsurance coverage that did not otherwise define that term. Appellee's reliance on *Christensen* is misplaced. As we pointed out in *Aetna Casualty & Surety Co. v. Souras*, 78 Md.App. 71, 75–76, 552 A.2d 908 (1989):

Although section 541(c) refers to "uninsured motorist" coverage, it is clear that its provisions operate as *underinsured motorist coverage to the extent that the person responsible for the accident has less liability coverage than the insured under the uninsured provisions of his own policy.* (Emphasis added.)

In so interpreting "underinsured motorist," we expressly overruled the language in *Christensen* upon which appellee relied, pointing out that *Christensen* was decided prior to *Hoffman*, in which the Court of Appeals made it perfectly clear that *Christensen* was wrong.

Although the term "underinsured motor vehicle" is not defined in the policy, our holding in *Aetna Casualty & Surety Co. v. Souras* adequately defines it. Since the automobile operated by the Hoffmans was covered for the occurrence in question (by the policy on that vehicle and the policy covering the driver) for an amount in excess of the UM/UIM coverage in appellee's father's policy, it was not an underinsured motor vehicle.

## II

Appellee next contends that an additional premium was paid for the underinsured motorist coverage, and therefore,

it is separate and distinct from his UM coverage. Appellee further states that "Colonial's interpretation of its own policy makes the inclusion of UIM coverage duplicitous and thereby removes any possibility ... of paying UIM coverage to the Batsons."

Although the trial court found that UM and UIM coverage were jointly purchased for a single premium of $4.00, it went on to state "Colonial does not go so far as to say that the Batsons were not charged for the underinsurance coverage."

According to an affidavit submitted by a claims supervisor at Colonial, "Colonial Insurance Co. of California charged a single premium of $4.00 for uninsured motorists coverage and underinsured motorists coverage for the applicable policy period, and that no separate and distinct premium charge for underinsurance motorists coverage was made." Appellee presented nothing to refute that evidence or create any genuine dispute as to the facts set forth therein.

Appellee further contends that if Frederick Batson did not purchase distinct UIM coverage then they would have no claim of entitlement to any additional recovery, thereby making the promised coverage illusory. This is simply not true. If the driver of the other vehicle had been "uninsured" then appellee would have been entitled to $20,000 under Colonial's Uninsured Motorists Coverage. On the other hand, if the driver of the other vehicle had been "underinsured," meaning that appellee's Uninsured Motorists Coverage of $20,000 was greater than the coverage limits of the tort-feasors' policies, then appellee would have been entitled to whatever damages would have been recoverable from the underinsured tort-feasor up to the limit of $20,000.[1]

---

1. An insurance policy issued in the State of Maryland which provides for more coverage than required under Md.Ann. code Art. 48A, 541(c)(1), or the uninsured motorist provisions, in essence means that the insured is covered to the extent of his policy less the amount of

While it's true that if the tort-feasor's policy is issued in Maryland then of necessity it will include the statutory minimum of $20,000 and appellee will never recover from his underinsurance coverage of $20,000, it is still not an illusory benefit. We find *Rafferty v. Allstate Ins. Co.*, 303 Md. 63, 492 A.2d 290 (1985) helpful to our analysis. In *Rafferty* the estate of a decedent killed in an automobile collision caused by an uninsured motorist sued decedent's insurer alleging that it was entitled to recover uninsured motorist benefits after having recovered uninsured motorist benefits in excess of the statutory minimums from the primary insurer. According to the Court of Appeals,

> [T]he instances in which more than one policy may be utilized are limited to those in which the primary insurer's uninsured motorist coverage is less than the statutory minimum. For example, given the facts of this appeal, had the primary insured been from out of state and purchased coverage for less than the Maryland statutory minimums, then Ms. Rafferty's estate could have recovered from Allstate up to the $20,000 minimum.

Id. at 71–72, 492 A.2d 290. Such is the case under the facts of this appeal.

### III

Appellee's final contention is that Colonial, in attempting to limit its UIM coverage, failed to make its intended meaning clear. We find no basis of support for this allegation.

As we stated in *Pedersen v. Republic Insurance Co.*, 72 Md.App. 661, 532 A.2d 183 (1987) absent ambiguity, construction of the contract is within the province of the court and Maryland has not adopted the rule that an insurance policy is to be most strongly construed against the insurer. *Id.* at 667, 532 A.2d 183 [citing *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970)]. Likewise, in

---

insurance paid by the tort-feasor's carrier. *Aetna Cas. & Sur. Co. v. Souras,* supra [78 Md.App.] at 78, 552 A.2d 908.

interpreting insurance contracts, the intention of the parties is to be ascertained if reasonably possible from the policy as a whole, and words are to be given their customary and normal meaning. *Id.*

Colonial's policy clearly and unambiguously stated that appellee's Underinsured Motorist Insurance was subject to the limits of appellee's Uninsured Motorists Insurance. In addition, the policy stated that Underinsured Motorists Insurance may be claimed when appellee's Uninsured Motorists Insurance limit of $20,000 exceeds the bodily injury or property damage limits on the other vehicle.

Accordingly, we hold that appellee was not entitled to recover damages under the "Underinsured Motorists Insurance" provision of his father's policy. The court erred in granting summary judgment in favor of appellee; it should have granted judgment in favor of appellant instead.

JUDGMENT REVERSED AND CASE REMANDED FOR ENTRY OF JUDGMENT IN FAVOR OF APPELLANT.

COSTS TO BE PAID BY APPELLEE.