REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 773

September Term, 2011

LINDA CONNORS, INDIVIDUALLY ETC.

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

Woodward,
Berger,
Eyler, James R.
    (Retired, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: March 25, 2014

Appellants, Linda Connors, individually and as personal representative of the Estate of Robert Connors, appeal from an Order of the Circuit Court for Montgomery County granting summary judgment in favor of appellee, Government Employees Insurance Company ("GEICO").[1]  Appellants present one question for our review:

> Do the underinsured motorist provisions of GEICO's insurance contract provide the Appellant, Linda Connors Individually and Linda Connors as personal representative of the Estate of Robert Connors, a limit of underinsured coverage of $300,000 each, subject to an aggregate payment to all Appellant's claims by GEICO not to exceed $300,000?

Finding no error, we shall affirm the judgment of the circuit court.

## BACKGROUND

Linda and Robert Connors, husband and wife, were injured on April 14, 2009, while walking on Captain Dement Drive in Waldorf, Maryland.  A vehicle driven by Adam Pond, pulled out of a driveway at 3269 Captain Dement Drive, striking Mr. and Mrs. Connors and knocking them to the ground.  Mrs. Connors suffered minor physical injuries and significant emotional trauma, while Mr. Connors was injured severely, and he died on January 31, 2011. Mr. and Mrs. Connors were both "insureds" under a motor vehicle policy issued by GEICO which provided uninsured motorist coverage ("UIM") with policy limits of $300,000 per person/$300,000 per occurrence. The tortfeasor, Adam Pond, maintained automobile liability insurance through Allstate Insurance Company with liability limits of $100,000 per

---

[1] Robert Connors died during the pendency of the instant case in the trial court, and Linda Connors was substituted as Personal Representative of his estate. We will use the term "appellants" for clarity, as there are two underlying uninsured motorist claims.  Where necessary, we will identify Mr. and Mrs. Connors, individually.

person/$300,000 per occurrence. With GEICO's consent, Mr. and Mrs. Connors accepted "per person" policy limits from Allstate, receiving $100,000 each, thereby exhausting the limits of the Allstate policy.

The Connorses submitted claims to GEICO pursuant to the UIM provisions of GEICO's Maryland Family Automobile Policy issued to Mr. Connors. GEICO asserted that, after crediting the policy for $200,000, which appellants received from Allstate, only $100,000 of UIM benefits remained. The Connorses disagreed with GEICO's calculation, contending that the "per person" limit of the policy should apply, leaving $300,000 in UIM benefits remaining.

The Connorses filed a claim with the Maryland Insurance Administration, pursuant to Maryland Code (1996, 2006 Repl. Vol., 2008 Cum. Supp.), § 27-1001 of the Insurance Article II ("I.A. II"),[2] alleging that GEICO had failed to act in good faith in settling their claim. On July 22, 2010, the Maryland Insurance Administration issued a decision, finding that GEICO did not breach its obligation to act in good faith, and agreeing with GEICO that $100,000 of UIM coverage remained. GEICO subsequently tendered the Connorses the $100,000 it asserts is available according to the terms of the UIM policy, under an agreement that allows appellants to pursue their contention that $300,000 in benefits remain (inclusive of the $100,000 paid).

---

[2] Unless otherwise indicated, all subsequent statutory references herein shall be to the 2008 Cumulative Supplement to the Insurance Article.

2

On December 16, 2010, Mr. and Mrs. Connors filed a lawsuit against GEICO, seeking declaratory relief in the Circuit Court for Montgomery County. After considering cross-motions for summary judgment, the circuit court granted summary judgment in favor of GEICO. The circuit court, in relevant part, stated as follows:

> 2.     The GEICO Policy is not ambiguous. GEICO is obligated under GEICO Policy No. 0377-86-55-06 to make $100,000 in UIM benefits available to satisfy the claims of [appellants].
>
> 3.     GEICO's remaining UIM obligation is calculated by taking its $300,000 "per accident" limit under the GEICO Policy and subtracting all amounts received by [appellants] that exhausted the tortfeasor's liability limits, which in this instance was $200,000. GEICO's remaining UIM obligation to [appellants] is to fill the "gap" between what [appellants] could have recovered from the tortfeasor had the tortfeasor maintained identical liability coverage to the coverage [appellants] purchased under the GEICO Policy. That "gap" is $100,000 which, as noted, has been paid.

Appellants noted this timely appeal.

## DISCUSSION

When we review the decision of a circuit court granting summary judgment, we review that decision *de novo*. *Powell v. Breslin*, 195 Md. App. 340, 345 (2010), *aff'd*, 421 Md. 266 (2011). A trial court, when deciding a motion for summary judgment, may grant summary judgment if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor the judgment is entered is entitled to judgment as a matter of law. *Id.* at 345-46. Where there is no dispute of material fact, our review focuses on whether the trial court's grant of the motion was legally correct. *Id.* at 346.

3

Appellants contend that the circuit court erred in interpreting the language of the GEICO insurance policy's UIM provisions. They argue that the plain language of the insurance contract allows for both Mrs. Connors and the estate of Mr. Connors to collect $300,000 pursuant to the policy's "per person" limits. Specifically, appellants contend that the policy's "subject to" language in subsection (2) of the "Limits of Liability" portion of Section IV support the "per accident" limit as being subservient to the "per person" limit. Appellants assert that the UIM policy provides $300,000 "per person" worth of coverage irrespective of the limiting language $300,000 "per occurrence." Because there were claims filed on behalf of two individuals, Mr. Connors and Mrs. Connors, appellants contend the UIM benefits calculation should start with a total of $600,000 in UIM coverage. Appellants agree that GEICO should receive credit for the $200,000 from Allstate's liability policy, but argue that this amount should be applied to the $600,000 figure, leaving $400,000. Finally, appellants conclude their calculation by using the $300,000 "per accident" limit as a "cap" on the $400,000 aggregate amount, thus entitling them to a total recovery from GEICO of $300,000.

GEICO responds that the language of the UIM policy is clear and unambiguous, mandating that $100,000 of UIM benefits remain available to appellants. GEICO asserts that the insurance contract states clearly that the "per occurrence" limit applies to claims of two or more people, and is to be reduced by all amounts paid by the tortfeasor, in aggregate. GEICO also argues that appellants' interpretation of the "subject to" language is flawed,

4

because, when read properly, it functions to restrict an individual insured from collecting more than the "per occurrence" policy limit. GEICO further contends that, in order to interpret the insurance policy accurately, the contract must be read in context with Maryland's UIM statutory scheme and relevant case law. According to GEICO, appellants' conscious decision to purchase $300,000 in UIM coverage, viewed in accord with Maryland's UIM statute, represents "the amount that would place [a]ppellants in the same position [as] if the tortfeasor had carried identical liability coverage." GEICO also contends that Maryland case law supports the "per occurrence" limit as the "appropriate starting point" for a UIM "gap" calculation. GEICO concludes that the circuit court was correct in finding that $100,000 of UIM benefits remain under the provisions of the insurance policy and in granting summary judgment in its favor.

## I.

UIM coverage "plays a leading role in Maryland's comprehensive motor vehicle insurance scheme by assuring compensation for victims of noninsured or inadequately insured motorists." Andrew Janquitto, *Maryland Motor Vehicle Insurance* § 8.1, at 308 (3d ed. 2011). Multiple amendments to the Maryland UIM statute evidence the increasing importance of UIM insurance within insurance law. UIM coverage first found its way into Maryland law in 1972. 1972 Md. Laws, Chap. 73, § 1; *see also* Janquitto, *supra*, § 8.1, at 308. In 1975, the UIM statute was amended to require every motor vehicle insurance policy issued in Maryland to contain minimum uninsured motorist coverage. 1975 Md. Laws, Chap.

562, § 1; *see also Waters v. U.S. Fid. & Guar. Co.*, 328 Md. 700, 710 (1992) . In 1981, the UIM scheme was again amended to allow insureds the opportunity to contract for more than a minimum amount of UIM coverage. 1981 Md. Laws, Chap. 510; *see also Waters*, 328 Md. at 711 (noting that by Chapter 510 of the 1981 Acts, the "General Assembly . . . required that insurers shall [make] available to the insured the opportunity to contract for higher amounts" (second alteration in original) (internal quotation marks omitted)).

Uninsured, and underinsured,[3] motorist insurance is applicable when the limit of the tortfeasor's liability insurance policy is less than an insured's UIM coverage. *Waters*, 328 Md. at 711-12. Maryland Code (1977, 2009 Repl. Vol.), §17-103 of the Transportation Article II mandates that in Maryland, each motor vehicle liability policy contain a minimum of $20,000 coverage for injury or death of any one person in an accident, $40,000 in coverage for injury or death of two or more people in an accident,[4] and a minimum of $15,000 in coverage for property damage resulting from any one accident. *See also* I.A. II § 19-509(e) (requiring that UIM coverage equal at least the amount required by Title 17 of the Transportation Article). The underlying purpose of Maryland's UIM scheme is to "provide an injured insured with resources equal to those which would have been available

[3] "The concept of 'uninsured' was broadened to include any vehicle insured with liability limits in an amount 'less than the amount of coverage provided to the insured under this subsection.'" *Waters v. U.S. Fid. & Guar. Co.*, 328 Md. 700, 711(1992) (quoting Md. Code (1972, 1981 Repl. Vol.), Art. 48A § 541(c)(1)) (summarizing the General Assembly's purpose of the 1981 amendments to the UIM scheme).

[4] These amounts were increased as of January 1, 2011, to $30,000 and $60,000 respectively. *See* 2010 Md. Laws, Chap. 411.

had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company." *Waters*, 328 Md. at 714. The statute permits insureds to contract for higher amounts than those provided under Title 17 of the Transportation Article provided these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. I.A. II § 19-509(e); *Hoffman v. United Servs. Auto. Ass'n*, 309 Md. 167, 178 (1987).

We interpret the language of an insurance policy in accord with the same principles applicable to the construction of other contracts. *Mitchell v. AARP Life Ins. Program, N.Y. Life Ins. Co.*, 140 Md. App. 102, 116 (2001). Like any other contract, an insurance contract is "measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985). The words of an insurance contract are given their customary, ordinary, and accepted meaning. *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 660 (2004). The ordinary meaning of a word is determined by what a reasonably prudent lay person would attach to it. *Id.* When a court finds that the contractual language is plain and unambiguous, the court will enforce the terms as a matter of law. *Pac. Indem. Co.*, 302 Md. at 389. If the language of an insurance contract is ambiguous, however, the court may turn to extrinsic evidence to determine the intent of the parties. *Clendenin Bros. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459 (2006). Maryland does not follow the rule that some of our sister states apply that an insurance policy should, as a matter of course, be construed against the insurer. *Megonnell v. U.S. Auto.*

7

*Ass'n*, 368 Md. 633, 655 (2002).  If ambiguous, however, an insurance policy "'will be construed liberally in favor of the insured and against the insurer as drafter of the instrument.'"  *Id.* at 655-56 (emphasis omitted) (quoting *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (2001)).

The pertinent provisions of the GEICO policy are set forth below:

**"SECTION IV– UNINSURED MOTORISTS COVERAGE**

* * *

**LIMITS OF LIABILITY**

Regardless of the number of ***insureds***, autos or trailers to which this policy applies:

1. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

2. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each accident" **is, subject to the above provision respecting each person**, the total limit of our liability for all such damages including damages for care and loss of services, due to ***bodily injury*** sustained by two or more persons as the result of one accident.

* * *

4. . . . .
The amount payable under this coverage will be reduced by all amounts:

(a) Paid by or for all persons or organizations liable for the injury . . . ."

8

(Emphasis added) (bold italics in original).

Appellants contend that the appropriate benefits calculation begins with subsection (1), which mandates a $300,000 limit for "each person" resulting from "one accident." Appellants argue that the "subject to" language in subsection (2) makes the $300,000 limit governing "each accident" subservient to the $300,000 limit for "each person" from subsection (1). Appellants' reading of the insurance contract would allow an additional recovery of up to $200,000 for Mrs. Connors individually and an additional recovery of up to $200,000 for the estate of Mr. Connors. Appellants further argue that failing to give meaning to the "subject to" language of subsection (2) would allow GEICO to "avoid paying benefits it otherwise agreed to pay." To provide additional clarity, appellants argue that the UIM benefits should be calculated as follows:

> Estate of Mr. Connors:
> | | |
> |---|---|
> | GEICO UIM Coverage | $300,000 per person |
> | Payment from Tortfeasor | ($100,000 per person) |
> | GEICO Coverage Remaining | $200,000 per person |
>
> Mrs. Connors:
> | | |
> |---|---|
> | GEICO UIM Coverage | $300,000 per person |
> | Payment from Tortfeasor | ($100,000 per person) |
> | GEICO Coverage Remaining | $200,000 per person |

Appellants conclude that by utilizing the per accident limitation of $300,000 as a cap on the above-calculated $400,000 aggregate amount, they are ultimately entitled to $300,000 in remaining UIM benefits.

GEICO counters that "subsection (2) is the starting point, not subsection (1), because

9

the claims involve injuries 'sustained by two or more persons as the result of one accident.'"

GEICO argues that using subsection (2) as a starting point, the per accident limit of $300,000

is reduced by the $200,000 received from the tortfeasor, leaving $100,000 in UIM benefits

available to appellants. GEICO contends that the "subject to" language of subsection (2),

when read properly, further limits liability pertaining to one accident involving one person.

To provide additional clarity, GEICO argues that the UIM benefits should be calculated as

follows:

> Estate of Mr. Connors and Mrs. Connors Individually:
> GEICO UIM Coverage       $300,000 per accident
> Payment from Tortfeasor       ($200,000 in aggregate)
> GEICO Coverage Remaining       $100,000 per accident

We agree with GEICO.

The plain language of subsections (1) and (2) of GEICO's insurance policy, indicates

the correct starting point for calculations of UIM benefits and the corresponding coverage

limitation. The decisive factor, in our view, is the number of injured insureds claiming under

the policy. Subsection (1) clearly states that it is applicable to "bodily injury sustained by one

person as the result of one accident." It follows logically that, if one insured is injured as the

result of one accident, subsection (1) limits the liability of the insurer to the coverage limits

pertaining to "each person." For example, if Mrs. Connors was the only person injured in

the accident, subsection (1) would be the appropriate starting point for the UIM benefits

calculation, limiting GEICO's liability to the policy's "each person" limit of $300,000.

Conversely, the unambiguous language of subsection (2) makes it applicable to

10

"bodily injury sustained by two or more persons as the result of one accident." Therefore, if two or more insureds are injured as the result of one accident, subsection (2) will apply to limit the liability of the insurer to the coverage limits relating to "each accident." When subsection (2) is the starting point for a claim, the "subject to" qualifying clause functions to further limit the liability of the insurer. Subsection (2) sets the "each accident" limitation for an injury involving two or more insureds, which is then further restricted by the "each person" limit of subsection (1). The qualifying clause does not subvert or modify the hierarchy of the subsections, as appellant contends, but rather acts to incorporate the limiting language of subsection (1) into subsection (2), providing a further restriction on liability. The result is two layers of limitation—subsection (2) initially limits liability to the "each accident" amount, and then liability is further limited by the "each person" amount. For example, the instant case involves two injured insureds, Mr. and Mrs. Connors, who asserted UIM claims arising from a single accident. Because two insureds were injured, the correct starting point for a UIM calculation is subsection (2), which mandates GEICO's liability is the "each accident" limit of $300,000. The "subject to" qualifying clause, as described previously, incorporates the "each person" limit of subsection (1) into subsection (2), further limiting GEICO's "each accident" liability. Because the "each person" limit in GEICO's policy is $300,000, subsection (1) does not provide any further limit on GEICO's liability. Thus the "each accident" limit of $300,000 applies.

Appellants' contention that the "per accident" limitation of subsection (2) is "subject

11

to" the "per person" limitation of subsection (1) arises out of their reading the contract provisions chronologically in the order of subsection (1) followed by subsection (2). Although appropriate with some contracts, this is not the manner in which the GEICO provisions were intended to be navigated. As stated above, the *number* of injured insureds is the crucial factor when determining in which paragraph the calculation originates, not the numeral preceding the contract provision.

We find no controlling precedent narrowly tailored to the facts of the instant matter. The Court of Appeals' decision in *Waters v. U.S. Fidelity & Guaranty Co.*, however, is instructive when considering issues involving Maryland's UIM statutory scheme. In *Waters*, Schreier drove a pickup truck across the center line and collided with a vehicle driven by Dunham. 328 Md. at 705. Waters was a passenger in the truck, and Waters carried UIM coverage with limits of $100,000 per person/$300,000 per accident. *Id.* at 706. Schreier maintained automobile liability insurance with limits of $100,000 per person/$100,000 per accident. *Id.* When $97,000 of Schreier's $100,000 liability policy was exhausted to cover injuries to Dunham, Waters filed a UIM claim to recover damages, which was denied by his insurer. *Id.* The trial court found that Schreier was not uninsured and therefore Waters could not collect under his policy for uninsured motorists. *Id.* at 707.

The Court of Appeals discussed the legislative intent underlying Maryland's UIM statute, while additionally contrasting the gap theory of recovery with the excess theory of

12

recovery.[5] *Id*. at 710-13 & n.5. The Court found that the purpose of Maryland's current UIM statute is to "provide an injured insured with resources equal to those which would have been available had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company." *Id.* at 714. The Court concluded that Schreier was underinsured compared to Waters, taking into account the $300,000 per accident limit on Waters' UIM policy, thus allowing Waters to proceed against his insurer pursuant to the $100,000 per person limit. *Id*. at 714-15.

In *Hoffman v. United Services Automobile Ass'n*, the Court of Appeals considered recovery under supplemental UIM coverage in excess of the statutorily required amount. 309 Md. at 171. The Hoffmans had purchased an automobile policy which included the statutorily required UIM coverage, and additionally, a supplemental UIM policy with limits of $300,000 per person/$500,000 per accident. *Id.* at 169. Mrs. Hoffman was killed and Mr. Hoffman was seriously injured during an automobile accident, as passengers, in a vehicle driven by Whelan. *Id.* After recovering from the tortfeasor's liability policy and Whelan's UIM policy, Mr. Hoffman sought additional compensation under his supplemental UIM policy. *Id.* at 169-70. Mr. Hoffman's UIM provider denied the claim, arguing that an insured could not recover on a duplicative basis subsequent to receiving in excess of the

---

[5] Maryland is a gap theory state. Under gap theory, the injured insured may recover the difference between their UIM coverage and money received from the tortfeasor. *See Aetna Cas. & Sur. Co. v. Souras*, 78 Md. App. 71, 78 (1989). Conversely, "[u]nder the 'excess' theory a tortfeasor is underinsured when the injured party's damages exceed the tortfeasor's liability coverage." *Waters*, 328 Md. at 712.

13

statutory minimums from other insurance sources. *Id.* at 170. The Court of Appeals found in favor of Mr. Hoffman recovering from his supplemental UIM policy, concluding that the General Assembly intended to make "'available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article . . . if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy.'" *Id.* at 178 (quoting Md. Code (1972, 1981 Repl. Vol.), Art 48A § 541(c)(2)).

In support of their position, appellants rely on the North Carolina case of *Aills v. Nationwide Mut. Ins. Co.*, 363 S.E.2d 880 (N.C. Ct. App. 1988). Mr. and Mrs. Aills were severely injured in an automobile accident in which the at-fault driver maintained liability insurance of $50,000 per person/$100,000 per accident. *Id.* at 881-82. The trial court awarded the Aillses over $650,000 in combined damages. *Id.* at 881. The tortfeasor's liability insurance was exhausted under the per person limits, paying Mr. and Mrs. Aills $50,000 each. *Id.* The Aillses each made a claim under Mr. Aills's UIM policy which provided coverage limits of $100,000 per person/$100,000 per accident. *Id.* The UIM insurer denied the Aillses' claims, contending that the tortfeasor's insurance had paid $100,000 in aggregate, and no further payment was due. *Id.* at 881-82. The insurance policy contained the following language, limiting the insurer's liability:

> The limit of bodily injury liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of bodily injury liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of

14

> liability for all damages for bodily injury resulting from any one accident.

*Id.* at 882. The Court of Appeals of North Carolina found the language susceptible to differing interpretations, and therefore construed the provision against the insurance company. *Id.* The court concluded that the "subject to" language made the "each accident" limit subordinate to the "each person" limit, entitling the Aillses to an additional recovery of $50,000 each. *Id.*

In further support of their argument, appellants cite *Austin Mut. Ins. Co. v. King*, 29 F.3d 385 (8th Cir. 1994). There, the tortfeasor, Leichtenberg, ran a stop sign and hit a car driven by King. *Id.* at 386. King and two of her passengers were seriously injured, while three other passengers in her car died as a result of the accident. *Id.* Leichtenberg's automobile liability policy, with limits of $50,000 per person/$100,000 per accident, was exhausted by dividing the $100,000 per accident limit between the six occupants of King's vehicle. *Id.* King maintained a UIM policy with coverage limits of $50,000 per person/$100,000 per accident. *Id.* The policy contained the following language:

> The limit of liability . . . is [insurance company's] maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability . . . is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

*Id.* at 388 (first and third alterations in original). The Court of Appeals for the Eighth Circuit held that the policy's "subject to" language dictated that the per person limit applied, and the

15

per accident limit on the coverage acted only as a cap to the aggregate recovery. *Id.* at 388-89. King and each of her passengers would recover $50,000 per person from the UIM insurer (less the amount received from the tortfeasor), subject to an aggregate maximum of $100,000 (the per accident limit). *Id.*

Appellants' reliance on *Aills* and *King* is misplaced. The limiting provisions in both *Aills* and *King* are clearly distinguishable from the limiting provision in GEICO's policy in the case *sub judice*. The limiting provisions of the GEICO policy are structured in subsections; subsection (1) applies unequivocally to accidents involving one insured and subsection (2) applies unequivocally to accidents involving two or more insureds. The "subject to" language in the GEICO policy appears as a qualifying clause within subsection (2), located in between two commas. In contrast, the limiting provisions in *Aills* and *King* consist of a single paragraph with the "subject to" language at the beginning of a sentence. *Aills*, 363 S.E.2d at 882; *King*, 29 F.3d at 388. The provisions in *Aills* and *King* establish liability limits based on one person and limit that amount using the per accident limit. *Aills*, 363 S.E.2d at 882; *King*, 29 F.3d at 388-89. This is materially different from the limiting provision in GEICO's policy, which establishes the applicable limitation based on the number of injured insureds making UIM claims. The structure of the provisions in *Aills* and *King*, the location of the "subject to" language, and the method of determining liability limits is substantially different from that of the GEICO provision.

Moreover, as to *Aills*, the North Carolina UIM statutory framework is distinguishable

16

from Maryland. The North Carolina UIM statute mandated two specific steps evidencing the legislature's intent as to what coverage limit applies: "(1) the number of claimants seeking coverage under the UIM policy; and (2) whether the negligent driver's liability policy was exhausted pursuant to a per-person or per-accident cap." *N.C. Farm Bureau Mut. Ins. Co. v. Gurley*, 532 S.E.2d 846, 848 (N.C. Ct. App.), *review denied*, 545 S.E.2d 427 (N.C. 2000). The second prong of the North Carolina statute, as interpreted by the court in *North Carolina Farm Bureau Mutual Insurance Co. v. Gurley*, required the per accident limit of the UIM policy to govern when the per accident limit of the tortfeasor's liability policy was used, and required the per person limit of the UIM policy to govern when the per person limit of the tortfeasor's liability policy was used. *Id.* at 849. In the case *sub judice*, I.A. II § 19-509 fails to provide the level of statutory guidance as does the North Carolina UIM statute when determining what coverage limit applies.

In sum, there is no available case law which is identical on the facts and law to the instant matter. The Maryland case law sufficiently supports our analysis of the GEICO policy language, while the out-of-state precedent offered by appellants lacks factual and statutory similarities to contradict our decision.

## II.

Assuming *arguendo* that the language of the GEICO insurance contract is ambiguous, we conclude that the result would remain unchanged. I.A. II § 19-509, contains the following provision which limits liability to an insurer:

17

(g) *Limit of insurer liability.*—The limit of liability for an insurer that provides uninsured motorist coverage under this section is the amount of that coverage less the amount paid to the insured, that exhausts any applicable liability insurance policies, bonds, and securities, on behalf of any person that may be held liable for the bodily injuries or death of the insured."

This provision of the uninsured motorist statute explains how to calculate policy benefits. *See Aetna Cas. & Sur. Co. v. Souras*, 78 Md. App. 71, 78 (1989) (noting that the statutory predecessor to I.A. II § 19-509(g) "provides a formula for calculating the amount of uninsured motorist coverage"). The Court of Appeals in *Waters* eliminated any remaining ambiguity surrounding Maryland's method of UIM calculation stating as follows:

> The two main theories are that underinsured motorist coverage provides "excess" coverage and that underinsured motorist coverage is "gap" coverage.
>
> Under the "excess" theory a tortfeasor is underinsured when the injured party's damages exceed the tortfeasor's liability coverage.
>
> Under the "gap" theory a tortfeasor is underinsured when the injured party's uninsured motorist coverage exceeds the tortfeasor's liability coverage.
>
> Maryland is a "gap" theory State . . . .

328 Md. at 712 n.5 (citations omitted). Accordingly, in Maryland, a gap theory state, the injured insured may recover the difference between his or her UIM coverage and money received from the tortfeasor. *Id.* In *Colonial Ins. Co. of Cal. v. Batson*, 85 Md. App. 467, 475 n.1 (1991), this Court found that, when calculating UIM benefits under a gap theory, "the insured is covered to the extent of his policy less the amount of insurance paid by the tort-

18

feasor's carrier."

Appellants agree that Maryland is a gap theory state, but contend that the court "misapplied the 'gap theory' in calculating the UIM benefits owed to [them]." Appellants contend that GEICO should not receive credit for "all payments made by the tortfeasor's carrier," but instead, "credit is to be based on what each person receives."

GEICO counters that, pursuant to the gap theory of recovery, appellants should receive the difference between the "per occurrence" UIM policy limits ($300,000) and what the tortfeasor's liability insurance paid ($200,000). GEICO contends that it should receive credit for the full $200,000 paid by the tortfeasor's liability insurance, because a finding to the contrary would be pursuant to the "excess theory," which Maryland does not follow. We agree with GEICO that the gap theory was applied correctly by the trial court, and $100,000 in UIM coverage remains available to appellants.

Accepting appellants' rationale of how to calculate UIM benefits using gap theory would result in consequences unintended by the Maryland General Assembly. Appellants' method of calculation creates two possible outcomes of recovery, which would vary, depending on the tortfeasor's status as: (1) completely uninsured/equally insured, or (2) underinsured. To illustrate this inconsistency, assume that appellants maintained identical UIM coverage ($300,000 per person/$300,000 per accident), but were instead involved in an accident with a completely uninsured tortfeasor. Using appellants' methodology, they would recover $300,000 for each person injured ($600,000 total), subject to a maximum of

19

$300,000 per accident, leaving them with a total recovery of $300,000. A second scenario exists in which the tortfeasor is equally insured with identical liability limits to appellants' UIM limits. This outcome would again consist of appellants receiving $300,000 in compensation from the tortfeasor's insurance company, although not being able to recover from their UIM insurer due to not being underinsured. Contrast the two aforementioned examples with the actual scenario, in which appellants were involved in an accident with a tortfeasor who was underinsured. Appellants assert that, after crediting the UIM policy for the $200,000 paid by the tortfeasor's insurance company, they are still entitled to $300,000 in UIM coverage. This provides appellants with a total recovery of $500,000 when the tortfeasor is underinsured, but only $300,000 when the tortfeasor is completely uninsured or equally insured. This logic would effectively create two categories of UIM recovery: a premium recovery when the tortfeasor is underinsured and a lesser recovery when the tortfeasor is completely uninsured or equally insured. We find no evidence from the statute, or pragmatic support, to indicate that the legislature intended varying recoveries based on the tortfeasor's comparative insurance level.

In *Gurley*, the North Carolina Court of Appeals faced a similar situation. The defendants in *Gurley* proposed a similar theory of recovery to that proposed by appellants and the court noted the unintended consequences that would result stating as follows:

> For example, if Mr. Fornes' liability coverage had been 50/100 instead of 25/50, defendants would not have been entitled to any UIM coverage because his automobile would not have been an "underinsured highway vehicle." Thus, defendants would have

20

received $100,000 total in liability coverage from his carrier. Likewise, if Mr. Fornes had been uninsured altogether, defendants would have again recovered a total of $100,000, this time in uninsured motorist ("UM") coverage. But under defendants' espoused interpretation, they would be entitled to $50,000 in liability coverage and $100,000 in UIM coverage, for a grand total of $150,000 in compensation. This would give defendants a windfall simply because they were involved in an accident with an underinsured motorist, as opposed to an insured or uninsured motorist. We do not believe our legislature intended such a result. After all, the purpose of UM and UIM insurance is the same—"to compensate innocent victims of financially irresponsible motorists." Since the purpose is the same, no windfall should be created as between the two.

532 S.E.2D at 849 (citation omitted).

In sum, we affirm the circuit court's grant of summary judgment in favor of GEICO, holding that the clear and unambiguous language of the GEICO insurance policy leaves GEICO with a remaining obligation to appellants of $100,000, which has been satisfied.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**